**D.G. SHELTER PRODUCTS
CO., Appellant,**

v.

**MODULINE INDUSTRIES,
INC., Appellee.**

No. 6926.

Supreme Court of Alaska.

Feb. 3, 1984.

William G. Royce, Royce, Wollenberg &
Friedman, Sitka, for appellant.

Michael T. Thomas, Robertson, Monagle, Eastaugh & Bradley, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

OPINION

BURKE, Chief Justice.

This is a products liability case involving the release of toxic formaldehyde fumes from the interior paneling of a mobile home. In this appeal we face only the narrow issue of whether Moduline, the mobile home's manufacturer, is entitled to recover its defense costs, including attorney's fees, from one of its parts suppliers, D.G. Shelter Products Co. [Shelter].

On January 14, 1975, William and Arline Heritage, owners of the mobile home, sued manufacturer Moduline and retailer Pioneer Brokerage and Sales, Inc. [Pioneer]. Alleging that Arline Heritage suffered physical injury due to formaldehyde fumes, the Heritages pled three causes of action: (1) negligence in design and construction of the mobile home, (2) breach of warranty, and (3) strict liability for marketing a defective product.[1]

Pioneer tendered the defense of plaintiffs' claims to Moduline but Moduline refused the offer. Thereafter, both Moduline and Pioneer actively defended the case. Four and one-half months prior to trial, Moduline filed third party complaints against Shelter and the other mobile home component suppliers.[2] The trial court, however, severed third party claims from the principal action.

After a jury trial, judgment was rendered in favor of Pioneer and Moduline. On appeal, we reversed the judgment and remanded for a new trial. *Heritage v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1059 (Alaska 1979).[3] Prior to a second trial, Pioneer, Moduline, Shelter, and the other third party defendants jointly settled with the Heritages.

After settlement, Moduline sought an award of attorney's fees from Shelter on common law theories of indemnity and breach of warranty. Moduline and Shelter filed motions for summary judgment and partial summary judgment respectively. Moduline argued that attorney's fees follow indemnity and it was therefore entitled to recover all defense costs. Shelter, on the other hand, argued that a trial on Moduline's defective design and manufacture or independent negligence was necessary to determine whether Moduline was in fact entitled to indemnity.[4]

---

* Dimond, Senior Justice, sitting by assignment made pursuant to Article IV, section 11, of the Constitution of Alaska.

1. Shortly before trial, plaintiffs amended their complaint to delete all claims not based on strict liability; those alleging negligence and breach of warranty were abandoned. *Heritage v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1059, 1060 (Alaska 1979).

2. "Moduline alleged that if there was a defect, it was entitled to recover [from the third party defendants] based on negligence, warranty, and indemnity theories." *Heritage v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1059, 1060 n. 2 (Alaska 1979).

3. "The superior court awarded full attorneys fees of $13,000 to Pioneer ... to be recovered from Moduline Industries to the extent they were not recovered from [the Heritages]." 604 P.2d at 1065. This ruling, which was the subject of a cross appeal by Moduline, was affirmed. *Id.*

4. Moduline and Shelter were parties to a stipulation that provided in part:

   1. This stipulation and agreement is solely for the purpose of providing an orderly and efficient resolution of the claims of Moduline against North Pacific Lumber Company, D.G. Shelter Products Company, Welsh Corporation, and U.S. Plywood-Champion Papers, Inc.

   . . . .

   3. The only claims remaining in the above-captioned litigation relate to Moduline's claim for indemnity from Welsh Corporation, North Pacific Lumber Company, D.G. Shelter Products Company and U.S. Plywood-Champion Papers, Inc. with respect to the costs and attorney's fees incurred by Moduline in connection with defending against the claims asserted by William and Arline Heritage. (This claim shall hereafter be referred to as "the indemnity claim".) All other claims between the parties hereto and Rosenburg Lumber Company have been released and forever discharged.

The trial court ruled that Moduline was entitled to summary judgment and awarded Moduline approximately $85,000 in defense costs, fees, and interest. Shelter appealed.

■ We hold that summary judgment was improper. The settlement agreement between Moduline and Shelter did not have the effect the trial court thought it did. Shelter did not admit to having produced a defective product. It explicitly stated that the settlement agreement:

> is in no way to be construed as a judicial admission of defect or as an opinion that it would have been possible for William and Arline Heritage to establish the existence of the defect if there had been a full and complete trial on the merits....

Whether Shelter supplied a defective product must be resolved before liability for attorney's fees can be determined.[5]

If the trial court determines that Shelter did supply a defective product, the trial court must then decide Moduline's liability. As we shall explain, if Moduline is simply an innocent party in the chain of commerce, having only passed on an already defective product, then Moduline would be entitled to indemnity and its attorney's fees, provided Shelter was given proper notice of the pending litigation and an adequate opportunity to undertake the defense of the case.

■ Proper notice of the litigation must be given so that the indemnitor will have a reasonable time in which to prepare a defense. A tender of defense by the indemnitee, however, is not required since it can be inferred upon timely notice of the pending action. *Bedal v. Hallack & Howard Lumber Co.*, 226 F.2d 526, 535–36 (9th Cir.1955) (a complaint sent 47 days prior to trial, but making no demand to defend the action, could not be said to be less than reasonable notice). An indemnitor who refuses to appear and defend upon proper notice is bound by the judgment and liable for indemnity. *Litton Systems, Inc. v. Shaw's Sales & Service, Ltd.*, 119 Ariz. 10, 579 P.2d 48, 50–51 (Ariz.App.1978). *See also Liberty Mutual Insurance Co. v. Byerly*, 299 F.Supp. 213 (E.D.Wis.1969) (no-

4. For the purpose of resolving the indemnity claim the parties hereto by agreement consent to a resolution of the issue of defect. Accordingly, each party agrees to proceed with the indemnity claim as though William and Arline Heritage had established that the mobile home owned by them and manufactured by Moduline was defective and that the defect consisted of the presence of formaldehyde gas. This is in no way to be construed as a judicial admission of defect or as an opinion on the part of any party hereto that it would have been possible for William and Arline Heritage to establish the existence of defect if there had been a full and complete trial on the merits of that issue.

5. The *question of whether the defect* agreed upon by the parties was one of design or manufacture remains open and subject to resolution by the court upon the presentation of competent and admissible evidence relevant thereto. However, this does not represent an agreement between the parties as to the effect of any distinction between design or manufacturing defect on the indemnity claim.

6. By agreeing to this hypothetical defect, no party is precluded from offering competent and admissible evidence to establish the existence of independent negligence on the behalf of any other party hereto. However,

by agreeing to reserve the question of independent negligence for future resolution, the parties do not agree as to the effect of such independent negligence if it is ultimately established.

....

8. Nothing herein is intended by any party to be an admission of negligence, defect, responsibility or liability of any party hereto, the same being expressly denied.

5. The "general rule" was stated in *Heritage v. Pioneer Brokerage & Sales, Inc.*, 604 P.2d 1059, 1067 (Alaska 1979), *quoting Addy v. Bolton*, 257 S.C. 28, 183 S.E.2d 708, 710 (1971):

> [I]n actions of indemnity, brought where the duty to indemnify is either implied by law or arises under contract, *and no personal fault of the indemnitee has joined in causing the injury,* reasonable attorney's fees incurred in resisting the claim indemnified against may be recovered as part of the damages and expenses. (Emphasis added)

We note what appears to be a technical error in our published opinion in *Heritage*. The italicized language in the above paragraph does not appear in *Addy v. Bolton*, which *Heritage* purports to quote. *Heritage*, nevertheless, accurately states the general rule.

tice three months before trial was sufficient in an indemnity action to bind the indemnitor to the results of trial). When third party claims are severed from the main action an adequate opportunity to undertake the defense is not precluded. The notified party can enter the action by opposing the motion to allow a third party complaint or, under Civil Rule 12(b), by filing any appropriate motion before answer. Therefore,

> [W]here an indemnitor is notified and can take part in ... the litigation, he is precluded from contesting the indemnitee's liability in the subsequent indemnity action. The indemnitor's knowing failure to participate is deemed a consent to the representation by the indemnitee.

*Jennings v. United States,* 374 F.2d 983, 986 (4th Cir.1967).

Thus, if the trial court finds that Shelter did supply a defective product and that Moduline is innocent, and that Shelter has been given proper notice and an adequate opportunity to undertake the defense, Moduline should be awarded its attorney's fees. If, however, Moduline is found to have contributed to the defect in the product, then no recovery for indemnity would be available.

REVERSED and REMANDED for further proceedings consistent with this opinion.